UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 11-cv-2417(JFB)(ARL)

———————————

DOUGLAS HOUSTON, ET AL.,

Plaintiffs,

VERSUS

TEAMSTERS LOCAL 210, AFFILIATED HEALTH AND INSURANCE FUND – VACATION FRINGE BENEFIT FUND, ET AL.,

Defendants.

———————————

**MEMORANDUM AND ORDER**
June 24, 2014

———————————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiffs bring this action to collect severance pay, which they argue is due to them under the terms of the defendant ERISA-regulated fund. The plan governing the fund states that employees must have been terminated "within one (1) year of the date that the Employer ceased operating its business" in order to collect severance pay. Plaintiffs were terminated approximately three months before their employer ceased operations, and argue that this qualifies them for severance pay because three months is "within" one year of the closing. Defendants argue that "within one year of" refers only to the period of time after the employer's closing, or alternatively, that both interpretations are rational and defendants' interpretation must control because the arbitrary and capricious standard of review applies in this case. Defendants also argue that every plaintiff except Houston failed to exhaust administrative remedies.

As is discussed in more detail below, the Court agrees that the plaintiffs other than Houston failed to exhaust administrative remedies, and thus their claims can be dismissed on that ground alone. On the interpretive question, as to Houston's claim (and, in the alternative, as to the other plaintiffs), the Court concludes that the term "within one (1) year of the date that the Employer ceased operating its business"— especially in the context of the entire integrated plan language—unambiguously refers to a time period *after* the defendant ceased operations, not before. Thus, because plaintiffs were terminated three months prior to the employer ceasing business operations, they are not entitled to collect severance pay under the plan. Even assuming *arguendo* that the plan language does not unambiguously support defendants'

position, at a minimum, it is ambiguous and defendants' interpretation must control because the plan grants them discretion to determine eligibility for severance pay. Under defendants' interpretation, which they employed consistently to other applicants (in addition to Houston), the denial of Houston's benefits was not arbitrary and capricious. Plaintiffs have not identified any evidence that defendants' interpretation plan was applied inconsistently, or that any extenuating circumstance exists, even though the Court granted them an additional opportunity to do so. Therefore, the Court grants the motion for summary judgment in its entirety.

I. BACKGROUND

A. Factual Background

Where noted, the following factual allegations from the complaint are taken as true for the purpose of this motion. Additionally, the Court cites facts contained in defendants' Statement of Material Facts pursuant to Local Rule 56.1, and supporting documents referenced therein. Although plaintiffs did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in defendants' Rule 56.1. As discussed below, it is clear from the parties' submissions and a review of the record that there is no factual dispute regarding the circumstances surrounding plaintiffs' termination, nor is there a factual dispute regarding the relevant language of the plan.

Plaintiffs contend that their employment was terminated when their employer ceased operations in November 2008. (Compl. ¶ III.) The employer reopened in February 2009 at reduced staffing levels, but did not employ any of the plaintiffs, and closed for good after just three weeks. (*Id.*) Defendants consider the effective date of closure to have been February 28, 2009. (Ex. A to De Rosa Decl.) Since plaintiff Houston was terminated on December 1, 2008, defendants denied his claim for severance pay, because he was not an active employee at the time his employer ceased operations.[1] (*Id.*)

In subsequent correspondence, defendants addressed Houston's claim that his termination three months before his employer finally closed brought him "within" one year of the closure. (Ex. B to De Rosa Decl.) Defendants made specific reference to the terms of the Summary Plan Description ("SPD") which both sides agree[2] sets forth the terms governing severance pay:

---

[1] The record does not contain evidence of the reasons for the denial of the other plaintiffs' claims, because they did not exhaust administrative remedies. As is discussed below, defendants have submitted evidence that Houston was the only plaintiff to exhaust administrative remedies by seeking re-examination of the denial of his benefits. Plaintiffs allege that Houston exhausted on behalf of all plaintiffs, but plaintiffs identify no evidence in support of that claim. The correspondence in the record is addressed to Houston only, and nothing in the plan documents suggests that a beneficiary can exhaust administrative remedies on behalf of anyone else.

[2] Plaintiffs attached the SPD to the complaint and rely on its language. Whether SPDs—which convey the contents of the Plan "in a manner calculated to be understood by the average plan participant," 29 U.S.C. § 1022(a)—are themselves legally enforceable plan documents has been the subject of some debate, with the Supreme Court recently holding that they are not automatically enforceable. *See CIGNA Corp., et al. v. Amara*, -- U.S. --, 131 S.Ct. 1866, 1877-78 (2011). Even after *Amara*, however, SPDs may still be incorporated into a plan explicitly. *See Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("[A]n insurer is not entitled to deferential review merely because it claims the SPD is integrated into

*When is it Payable?* Termination Vacation Pay is payable when a Contributing Employer goes out of business, liquidates its assets or moves out of the area resulting in the permanent layoff of all its employees . . . . *Who is Eligible?* Any active employee of a Contributing Employer who had at least one (1) year of continuous service prior to permanent termination of employment and who was permanently terminated within one (1) year of the date that the Employer ceased operating its business.

(*Id.* (quoting SPD at 8); Def. 56.1 ¶ 1.)

Defendants' letter to Houston asserted that they had "consistently interpreted these provisions to require eligible employees to be active employees on the date the employer ceased operating its business." (*Id.*) The letter suggests that, in addition to employees terminated on the date of the employer's closure, "employees who may be retained . . . to wind up the employer's affairs are also eligible to receive severance pay," which is consistent with defendants' interpretation of "within" as referring only to the time period *after* the employer ceases operations. (*Id.*)

---

the Plan. Rather, the insurer must demonstrate that the SPD is part of the Plan, for example, by the SPD clearly stating on its face that it is part of the Plan."). Here, neither party contends that the SPD is not an enforceable document, and the SPD states on its face that it contains plan terms. (*See* SPD at 13 ("This Summary Plan Description includes information concerning the circumstances may result in . . . ineligibility . . . . [T]he foregoing terms of this Plan Description booklet . . . detail the eligibility rules, qualification rules, benefits, limitations and exclusions from coverage.).) Therefore, the Court will enforce the terms of the SPD.

B. Procedural Background

Plaintiffs filed the complaint in this action on May 18, 2011. After litigating a default-judgment motion and engaging in discovery, defendants moved for summary judgment on October 15, 2013. On November 18, 2013, plaintiffs filed a letter opposing the motion, arguing that the parties' conflicting interpretations of the SPD created a genuine issue of material fact precluding summary judgment. Defendants replied in further support of their motion on December 11, 2013.

On April 8, 2014, the Court issued an order directing defendants to serve and file the "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment," which defendants had not previously served on plaintiffs, but which is required by Local Civil Rule 56.2. The Court afforded plaintiffs an additional opportunity to submit an opposition to defendants' motion after receiving the Pro Se Notice, in light of the fact that their first opposition, filed before receiving the Pro Se Notice, did not include a statement of material facts, nor did it identify any material facts or evidence, other than references to plan documents and dates.

Defendants served plaintiffs with the Pro Se Notice and the text of Rule 56 on April 9, 2014. On May 29, 2014, plaintiffs filed an Affirmation in Opposition to Defendant's Motion, but the affirmation contains no new factual allegations, except the allegation (discussed *infra*) that plaintiff Houston exhausted administrate remedies on behalf of all plaintiffs.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only

grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

When considering a dispositive motion made by or against a *pro se* litigant, the Court is "mindful that a *pro se* party's pleadings must be 'liberally construed' in favor of that party and are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted). Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment,

and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).

### III. DISCUSSION

First, the Court considers whether plaintiffs other than Houston have exhausted administrative remedies. Next, the discussion turns to the interpretive question presented by Houston's claim—namely, whether he was terminated "within" one year of his employer's closure under the language of the plan.

A. Exhaustion

Although "ERISA itself does not contain an exhaustion requirement," *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013), the Second Circuit has long recognized "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Alfarone v. Bernie Wolff Const. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986). The Circuit has noted several important purposes served by requiring exhaustion in ERISA cases:

> to uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; to provide a sufficiently clear record of administrative action if litigation should ensue; to assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*; to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.

*Kirkendall*, 707 F.3d at 179.

Because the statute does not establish a procedure for exhausting administrative remedies, "exhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). Here, the relevant plan or policy—the SPD—instructs beneficiaries that:

> If you disagree with the reason for denial, you may have your claim re-examined provided your written request is received by the Fund Office within sixty (60) days following the date of the original notice of rejection . . . . After re-examination, if it is found that denial or reimbursement is again affirmed and you wish to question the determination, you may, within thirty (30) days following the second notice of denial, forward a written request to the Fund Office for a hearing before an Impartial Referee.

(SPD at 10-11).

Although the appeal right includes the word "may," such language nonetheless imposes a duty on beneficiaries to exhaust administrative remedies. *See Greigenberger v. Hartford Life Ins. Co.*, 131 Fed. App'x 756, 758 (2d Cir. 2005) ("[T]he inclusion of the term 'may' in Hartford's policy cannot excuse Greifenberger from the duty to exhaust administrative review before filing suit under ERISA."); *accord Kennedy*, 989

5

F.2d at 594 ("Were OPM review optional, the usefulness of this right of OPM to bind carriers would be diminished as a tool for carrying out Congress' intent to protect and benefit FEHBP participants and their beneficiaries.").

Thus, the SPD imposes a duty to exhaust administrative remedies by requesting re-examination of the denial of benefits, and by requesting a subsequent hearing if necessary. Defendants have offered evidence that no plaintiff other than Houston met this obligation (De Rosa Decl. ¶ 6), and plaintiffs have only disputed that assertion by alleging that plaintiff Houston exhausted administrative remedies on behalf of all plaintiffs. However, plaintiffs identified no evidence showing that Houston did, or was authorized to, act on their behalf. The correspondence submitted by defendants is addressed to Houston only and discusses only his claim. (*Id.*) Moreover, the SPD language quoted above does not suggest that a beneficiary may exhaust administrative remedies on another's behalf; in fact, its language suggests the opposite, and plaintiffs have identified no evidence that collective exhaustion was permissible as a matter of practice. Therefore, defendants have shown the absence of a genuine issue of material fact concerning exhaustion, and the Court grants the motion for summary judgment on this ground with respect to all plaintiffs except Houston.[3]

---

[3] There is an exception to ERISA exhaustion if a party makes a "clear and positive showing" that exhaustion would have been futile. *Kennedy*, 989 F.2d at 594. Plaintiffs have not attempted to make any showing on this question, but even assuming they did, their claims would fail for the same reason as Houston's—namely, defendants' interpretation of the SPD is not arbitrary or capricious.

B. Interpretation of the SPD

The parties appear to agree that the central question presented by Houston's claim (as well as the other plaintiffs) is the meaning of the word "within" as it appears in the SPD. The SPD states that an employee is eligible for benefits:

> who had at least one (1) year of continuous service prior to permanent termination of employment and who was permanently terminated *within* one (1) year of the date that the Employer ceased operating its business.

(SPD at 8 (emphasis added).)

The Court agrees with defendants that the meaning of the word "within" is unambiguous as used in the paragraph quoted above, especially when considered in "the context of the entire integrated agreement." *Gibbs v. CIGNA Corp.*, 440 F.3d 571, 579 (2d Cir. 2006). As a threshold matter, when the term "within" is followed by a designation of some period of time, *and* then the word "of" followed by some event—such as "the notice of claim was filed within four days of the accident" or "he was married within two years of his 20th birthday" or "the player was traded within one week of winning the championship"—the period of time is commonly understood to begin on the date of the event and is then measured moving forward in time (not backward). In other words, the preposition "of" makes that event the start of the relevant period, not the end point. In fact, courts routinely use such phrasing in all types of contexts, always in reference to a prospective time period. *See, e.g.*, *Wilson v. Nw. Mutual Ins. Co.*, 625 F.3d 54, 60 n.1 (2d Cir. 2010) ("However,

the cancellation at issue here could be completed immediately and *within one year of the agreement to cancel*, and therefore § 5-701(a)(1) is inapplicable.") (emphasis added); *Ramadan v. Gonzales*, 479 F.3d 646, 649 (9th Cir. 2007) ("Ramadan conceded that she failed to file her asylum application *within one year of entry* into the United States, as is required under 8 U.S.C. § 1158(a)(2)(B).") (emphasis added); *In re Pratt*, 411 F.3d 561, 565 (5th Cir. 2005) ("To establish that discharge should be denied under § 727(a)(2)(A), a creditor must show four elements: (1) a transfer [or concealment] or property; (2) belonging to the debtor; (3) *within one year of the filing of the petition*; [and] (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." (emphasis added) (citations and internal quotation marks omitted)); *White v. Metro. Gov't of Nashville*, No. 3:11-cv-0607, 2013 WL 269042, at *5 (M.D. Tenn. Jan. 24, 2013) ("Tenn. Code Ann. §§ 4-21-101 *et seq*., permits plaintiffs to file discrimination claims either by (1) filing an administrative complaint with the Tennessee Human Rights Commission ("THRC") or (2) by filing suit directly and then filing a complaint with the THRC *within one year of the alleged discriminatory action*.") (emphasis added); *Myers v. Cigna Prop. & Cas. Ins. Co.*, 953 F. Supp. 551, 556 (S.D.N.Y. 1997) ("Myers, therefore, must have brought suit *within one year of the date Cigna's liability accrued*.") (emphasis added).

The unambiguous meaning of this language is not only apparent on its face, but is confirmed when the language is examined in the context of the integrated plan agreement. In particular, the provision addresses severance pay for "active employees" once the business ceases operation and, in doing so, explicitly creates a temporal requirement for the active employee both *before* the end of operations (namely, "had at least one year of continuous service prior to permanent termination of employment") and *after* the end of operations (namely, "within one year of the date that the Employer ceased operating its business"). The purpose of these requirements is clear—that is, to (1) ensure that, to be eligible for severance, the active employee had been with the company a minimum of one year prior to being terminated because the employer ceased operations, and (2) ensure that, if the employee kept working after operations ceased, in order to wind up affairs (for up to one year), he or she would still receive the severance.

To read the second requirement to mean that the employee had to be terminated within one year *before* the employer ceased operating its business would be completely inconsistent not only with the overall purpose of the severance (as described in the SPD), but also with the other plain language in the plan provision. First, in describing "[w]hen it is payable," the plan language makes clear that severance pay is designed to compensate active employees (meeting certain criteria) who are with the company at the time the Company ceases business operations, not those (like plaintiffs) who left the company some time earlier. *See* SPD at 8. ("*When is it Payable?* Termination Vacation Pay is payable when a Contributing Employer goes out of business, liquidates its assets or moves out of the area resulting in the permanent layoff of all its employees."). In fact, the section regarding "[w]ho is eligible" confirms that it does not apply to employees who left the business prior to the cessation of operations because it refers to "[a]ny *active* employee of a Contributing Employer." *Id*. (emphasis added). Thus, the term "active employee" further demonstrates that former employees,

7

like plaintiffs, are not eligible. In addition, the eligibility requirements use the term "prior" to refer to the requirement of one year of continuous service before termination, thus suggesting that the use of a different term—"within"—in the same sentence for the second one-year requirement refers to being terminated in the one-year period after the date of the closing of the business, rather than the one-year period before ceasing operations. Such a reading of the plain language of the plan, in context, would be consistent with the clear purpose of the severance which, as noted above, is to compensate employees who are with the company at the time it ceases operations.

In contrast, plaintiff's interpretation is irrational not only because it contradicts the language and purpose of the provision, but also would lead to utterly absurd results. For example, under plaintiff's interpretation of "terminated within one year" of the cessation of operations, an employee terminated 11 months before the company ceased operations (and for reasons completely unrelated to the cessation of operations, such as misconduct) would still be entitled to severance, while a 20-year employee who was with the company on the day it ceased operations and was asked to stay on and work for one additional month to wind up the employer's affairs, would not be eligible for severance. In other words, employees who lost the job in the year prior to the end of business operations for reasons unrelated to the closure would be eligible for benefits, while workers terminated precisely because of the closure, but who worked for some period beyond the closure, would not. Such a tortured reading of that language defies the integrated plan language and common sense.[4] In sum, the Court concludes that language at issue, especially in the context of the integrated plan language, unambiguously supports defendant's interpretation.

In any event, even assuming *arguendo* that the language was ambiguous, the Court concludes that the defendants still prevail as a matter of law. Plaintiffs appear to contend that, if there is an ambiguity, the Court must construe it against defendants, the drafters. Although courts in the Second Circuit have applied that rule in ERISA cases, they have done so when performing *de novo* review. *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443 (2d Cir. 1995). When performing "the highly deferential arbitrary and capricious standard of review . . . the rule of *contra proferentum* is inapplicable." *Id.* at 443-44.

Thus, the Court must determine which standard of review governs this case. A denial of benefits under ERISA "'is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "If the insurer establishes that it has such discretion, the benefits decision is reviewed under [an] arbitrary and capricious

---

[4] Although *pro se* plaintiffs argued that "within" referred *only* to the period of time before the ceasing of operations, even if they argued that it referred to either before *or* after, that interpretation would produce the same absurd result: employees fired for reasons unrelated to the closure would receive severance pay simply because the closure happened to occur less than one year after their termination. Neither common sense nor the language of the plan supports that interpretation.

8

standard." *Krauss*, 517 F.3d at 622; *see also Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 145 (2d Cir. 2003) ("The Supreme Court . . . has indicated that plans investing the administrator with broad discretionary authority to determine eligibility are reviewed under the arbitrary and capricious standard.").

Here, the language of the SPD grants discretionary authority to defendants. In particular, it states that:

> The Trustees, *solely and exclusively, and as their best judgment determines*, shall . . . carry out a plan and program of benefits . . . including provisions and definitions relating to coverage and eligibility, and any and all matters which the Trustees may deem appropriate for the determination of benefits and administration of the plan and program herein contemplated . . . [and] no provision herein set forth shall be deemed nor constructed to restrain or limit the Trustees in any respects . . . and all of the basis and details of such plan and program shall . . . be those as set forth from time to time by the Trustees *as their judgment and discretion shall determine* . . . . The Trustees shall interpret and construe the provisions of Indenture and terms used herein, *and such construction as adopted and announced by the Trustees shall be deemed the proper construction*.

(SPD at 12-13 (emphasis added).)

Plaintiffs did not address whether this language confers discretionary authority to defendants,[5] but courts considering similar language have held that it does. *See Pagan*, 52 F.3d at 441 ("[S]hall determine conclusively for all parties all questions arising in the administration of the . . . Plan and any decision . . . shall not be subject to further review."); *Zarringhalam v. United Food & Comm. Workers Int'l Union Local 1500 Welfare Fund*, 906 F. Supp. 2d 140, 156-57 (E.D.N.Y. 2012) ("[C]omplete discretionary authority to interpret and construe"); *Suarato v. Bldg. Servs. 32BJ Pension Fund*, 554 F. Supp. 2d 399, 417 (S.D.N.Y. 2008) ("To decide, in the Trustee's sole discretion, all questions . . . relating to the eligibility or rights of Participants . . . . [and] [t]o interpret, in the Trustees' sole discretion, all terms . . . in the Plan.").

Accordingly, the Court will apply the arbitrary and capricious standard of review. Under that standard, "[w]here both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." *Miles v. N.Y. State Teamsters Conf. Pension & Ret. Fund Emp. Pension*

---

[5] Plaintiffs' primary argument does not address the distinction between *de novo* and arbitrary and capricious review—plaintiffs simply argue that the textual ambiguity creates an issue for trial. However, because the Court concludes that arbitrary and capricious review applies, it may "overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan*, 52 F.3d at 442. Defendants have produced evidence that their decision was consistent with their general practice and the text of the SPD, and plaintiffs have identified no evidence to the contrary, even after the Court gave them a second chance to respond to defendants' motion. Accordingly, the Court concludes that, even if "within" was ambiguous, such ambiguity does not create a genuine issue for trial because there is no evidence to support a finding that defendants' interpretation was arbitrary and capricious.

9

*Ben. Plan*, 698 F.2d 593, 601 (2d Cir. 1983); *see also Zarringhalam*, 906 F. Supp. 2d at 156.

Here, as discussed above, defendants argue that "within" refers to a period of time after the event to which it refers: they cite the example of someone who "made several friends within days of moving" into a new home. (Def. Repl. at 4.) Although the Court concludes that the language unambiguously supports defendants' position in the context of the integrated plan language, the Court also concludes, in the alternative, that the defendants' interpretation of "within" is, at a minimum, rational. Plaintiffs have presented no evidence to contest defendants' assertion that they consistently interpreted the SPD in this manner, even after the Court provided them a second chance to do so, and the SPD language supports defendants' interpretation as rational. (*See* SPD at 8 ("Termination Vacation Pay is payable when a Contributing Employer goes out of business.").) Therefore, even if the language were deemed to be ambiguous, defendants' interpretation must control. Under that interpretation, the denial of Houston's benefits (as well as that of the other plaintiffs) was neither arbitrary nor capricious, and there is no legal basis to disturb defendants' decision.

## IV. CONCLUSION

For the reasons set forth above, the Court grants summary judgment for the defendants on all claims. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 24, 2014
      Central Islip, NY

\* \* \*

Plaintiffs are *pro se*. Defendants are represented by Thomas Albert Thompson, 66 Main Street, Suite 802, Yonkers, NY 10701, and Roland Acevedo, Seiff, Kretz, & Abercrombie, 444 Madison Avenue, New York, NY 10022.